JAMES T. McDERMOTT, OSB No. 933594
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204
Telephone:    (503) 944-6025
Facsimile:    (503) 295-1058
jmcdermott@balljanik.com

BENJAMIN J. HORWICH (*pro hac vice* motion forthcoming)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077
ben.horwich@mto.com

JESSICA REICH BARIL (*pro hac vice* motion forthcoming)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702
jessica.baril@mto.com

*Attorneys for Plaintiff BNSF Railway Company*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>           Plaintiff,<br><br>    vs.<br><br>OREGON DEPARTMENT OF REVENUE, and NIA RAY, in her official capacity as Director of the Oregon Department of Revenue,<br><br>           Defendants. | Case No. 3:17-cv-1716<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1.      Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 ("the 4-R Act"), Pub. L. No. 94-210, 90 Stat. 31, 54, provides that a State may not assess or collect a tax that discriminates against a rail carrier, such as plaintiff BNSF Railway Company ("BNSF"). In clear violation of this federal law, defendant Oregon Department of Revenue, through its Director, defendant Nia Ray (collectively, the "Department"), has singled out and targeted BNSF for increased taxation compared to nearly all other commercial and industrial taxpayers. BNSF brings this action to vindicate its federal right to equal treatment under state tax law.

2.      The Oregon Department of Revenue administers Oregon's property tax system. As part of this property tax system, Oregon's general rule is that intangible personal property is not subject to assessment and taxation. But rail carriers (along with a handful of other businesses) are subject to a different—and much less favorable—rule, under which the intangible personal property of railroads is subject to assessment and taxation in Oregon.

3.      In 2010, BNSF was acquired by Berkshire Hathaway Inc. This transaction did not itself alter BNSF's tangible assets or operations, but under standard accounting principles, the transaction caused BNSF to record more than $14.8 billion of goodwill on its balance sheet. Although such goodwill has no manifestation other than as an accounting device, it can be treated as intangible personal property. In 2017—several years after BNSF was acquired by Berkshire Hathaway Inc.—the Department decided to include this intangible goodwill, as well as other intangible personal property, in BNSF's assessed value for property tax purposes, dramatically increasing BNSF's property tax bill, leading to the current dispute.

4. Few commercial and industrial taxpayers in Oregon could ever face such a situation. Intangible personal property in general, and goodwill in particular, is not included in the property tax valuation for nearly all commercial and industrial taxpayers in Oregon. Oregon's statutory rule allowing the taxation of intangible personal property of railroads thus targets railroads for discriminatory treatment. This type of targeted and unfavorable property tax treatment of railroads by other States has consistently been found to violate the 4-R Act, and it should be held unlawful in Oregon as well.

## PARTIES

5. BNSF is a Delaware corporation with its principal place of business in Fort Worth, Texas. It is a common carrier by railroad engaged in interstate and intrastate commerce in numerous States, including Oregon. BNSF is one of the largest freight railroad networks in North America, with approximately 23,000 route miles of owned single track in 28 States and three Canadian provinces, including approximately 226 route miles of owned single track in Oregon.

6. Defendant Oregon Department of Revenue administers Oregon's revenue and tax laws, including Oregon's property tax. *See* ORS § 305.015; *id.* § 306.115.

7. Defendant Nia Ray, being sued in her official capacity, is the Director of the Oregon Department of Revenue. *See* ORS § 305.035.

## JURISDICTION

8. The 4-R Act confers jurisdiction on federal courts "to prevent a violation of" its provisions. 49 U.S.C. § 11501(c). The 4-R Act confers this jurisdiction notwithstanding the Tax Injunction Act, 28 U.S.C. § 1341, which generally prohibits federal courts from enjoining the

collection of state taxes when a plain, speedy, and efficient remedy may be had in state court. 49 U.S.C. § 11501(c).

9. This Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. §§ 2201 and 2202 because the action presents an actual controversy within the Court's jurisdiction.

10. The Oregon Department of Revenue is a proper defendant in this action, notwithstanding Oregon's sovereign immunity, because the 4-R Act abrogates state sovereign immunity pursuant to Congress's powers under Section 5 of the Fourteenth Amendment. *Or. Short Line R.R. v. Dep't of Revenue of Or.*, 139 F.3d 1259, 1267 (9th Cir. 1998).

## VENUE

11. Venue is proper in the District of Oregon under 28 U.S.C. § 1391(b)(1) because Defendant Oregon Department of Revenue is an arm of the State of Oregon and Defendant Ray resides in Oregon.

12. Venue is also proper in the District of Oregon under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in Oregon and a substantial part of the property that is the subject of this action is situated in Oregon.

## INTRADISTRICT ASSIGNMENT

13. For the 2017 tax year, the largest portion of BNSF's State Assessed Property Value is attributable to property located in the Portland Division, when considering the allocation of BNSF's State Assessed Property Value by Division. This action concerns the proper assessment of BNSF's property in Oregon. Accordingly, assignment to the Portland Division is proper under Local Rule 3-2(b) because a substantial part of BNSF's property in Oregon is located in the Portland Division.

**OREGON'S PROPERTY TAX SYSTEM**

14. Oregon has a property tax system. The Department exercises "general supervision and control over the system of property taxation throughout the state." ORS § 306.115(1).

15. As a part of this property tax system, a small class of taxpayers—referred to as "centrally assessed" taxpayers—pay property tax on an increased body of property compared to all other taxpayers. In particular, centrally assessed taxpayers alone pay tax on intangible personal property. This arises because most taxpayers pay property tax on real property and tangible personal property situated within Oregon, but not on intangible personal property. ORS § 307.030(1)-(2). But centrally assessed taxpayers pay property tax on real property, tangible personal property, *and* intangible personal property. *Id.*; *see also* ORS § 308.505(14) (defining "property" for centrally assessed taxpayers to include "all property of any kind, whether real, personal, tangible or intangible").

16. Notwithstanding this differential treatment under Oregon's property tax laws, centrally assessed taxpayers and other commercial and industrial taxpayers alike are equally capable of holding intangible personal property, including goodwill.

17. The Department centrally assesses property held by companies maintaining businesses or selling commodities, including railroad transportation, air transportation, water transportation upon inland water of the State of Oregon, communication, heating, gas, electricity, and pipeline. ORS § 308.515(1).

18. For these centrally assessed taxpayers, the Department may value the entire property of a company "both within and without the State of Oregon, as a unit." ORS § 308.555. The Department may then determine the "proper proportion of the entire property assessable for taxation in [Oregon]," ORS § 308.550(2)—a ratio sometimes referred to as the "allocation

factor." This allocation factor for railroads is based on multiple ratios, as set out in the Oregon Administrative Rules.  OAR 150-308-0605.  One such ratio, for example, is the ratio of a railroad's single track mileage in Oregon relative to the railroad's total amount of single track mileage systemwide.  *Id.*

19. At all times relevant to this action, BNSF has been a centrally assessed taxpayer in Oregon.

### DETERMINING ASSESSED VALUE FOR THE TAXATION OF PROPERTY IN OREGON

20. Oregon Measure 50, passed in 1997, puts a ceiling on the growth of assessed values for property in Oregon.  Or. Const. art. XI, § 11.

21. In Oregon, each property is assigned both a Measure 50 maximum assessed value ("MAV") and a real market value ("RMV").  *Id.*  The assessed value of a property is the lesser of the property's RMV and the property's Measure 50 MAV.  ORS § 308.146(2).

22. The growth of a property's Measure 50 MAV is generally capped at three percent per year.  Or. Const. art. XI, § 11(1)(b); ORS § 308.146(1).  But a property's Measure 50 MAV could grow by more than three percent if any of the following exceptions apply: "(a) The property is new property or new improvements to property; (b) The property is partitioned or subdivided; (c) The property is rezoned and used consistently with the rezoning; (d) The property is first taken into account as omitted property; (e) The property becomes disqualified from exemption, partial exemption or special assessment; or (f) A lot line adjustment is made with respect to the property[.]"  ORS § 308.146(3).  The sale of a property does not qualify as an exception.  Accordingly, the growth of a property's Measure 50 MAV should be capped at three percent even after a sale transaction, unless an exception applies.

23. The RMV of all property, real and personal, is defined as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting

without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS § 308.205(1).

24. The Department of Revenue prepares an assessment roll for centrally assessed taxpayers. ORS § 308.560. This assessment roll includes for each taxpayer, *inter alia*, a general property description and the taxpayer's RMV. OAR 150-308-0670.

25. Once a RMV and Measure 50 MAV are determined for property, the ultimate assessed value of the property is the lesser of the two values. ORS § 308.146(2).

### THE DEPARTMENT'S TREATMENT OF BNSF'S INTANGIBLE PERSONAL PROPERTY

26. In 2010, all outstanding shares of BNSF were acquired by Berkshire Hathaway Inc. Applying standard accounting principles to this transaction, BNSF recorded approximately $14.8 billion of intangible goodwill as an asset on its balance sheet. *See* BNSF Ry. Co., Annual Report (Form 10-K) (Feb. 28, 2011), at 18, 22, 25, and 33.

27. In 2015, for the first time, the Department decided to include this goodwill (and certain other intangible personal property) in its calculation of BNSF's RMV. The Department did not, however, include the goodwill or other intangible personal property in its calculation of BNSF's Measure 50 MAV for 2015. In 2015, BNSF's Measure 50 MAV was less than its RMV, and therefore BNSF's property tax assessment was based on its Measure 50 MAV. Accordingly, the inclusion of goodwill and other intangible personal property in the RMV calculation had no effect on BNSF's assessed value.

28. In 2016, the Department again included the intangible goodwill and other intangible personal property in BNSF's RMV calculation. The Department did not, however, include this goodwill or intangible personal property in BNSF's Measure 50 MAV calculation.

Because BNSF's Measure 50 MAV was again lower than its RMV, the inclusion of goodwill and other intangible personal property had no effect on BNSF's assessed value.

29.     Then, in 2017, seven years after this goodwill was recognized in conjunction with Berkshire Hathaway's 2010 acquisition of BNSF, the Department decided to include the $14.8 billion of intangible goodwill in BNSF's RMV *and* Measure 50 MAV calculations.  The Department's inclusion of this intangible goodwill increased BNSF's property tax bill.

30.     In 2017, the Department also included—again, for the first time—an additional $637 million of net intangible personal property in its calculation of BNSF's Measure 50 MAV.  This amount corresponds to an accounting entry on BNSF's balance sheet described as "Intangible assets," which "primarily consist[s] of franchise and customer assets."  *See* BNSF Ry. Co., Annual Report (Form 10-K) (Feb. 24, 2017), at 19, 30.

31.     The inclusion of goodwill in the Measure 50 MAV calculation resulted in a growth in BNSF's Measure 50 MAV above the three percent cap.  The Measure 50 MAV of a property is allowed to exceed the three percent cap only if an exception applies.  The sale of a property—such as the sale of BNSF's stock to Berkshire Hathaway—does not qualify as an exception.  The Department's inclusion of additional intangible personal property further increased BNSF's Measure 50 MAV.

32.     In 2016, the Measure 50 MAV for BNSF, which became its assessed value, was $147,185,400.  For 2017, the Department has included approximately $15.4 billion of intangible personal property—the $14.8 billion of goodwill and the additional $637 million of other net intangible personal property—as "improvements" in its Measure 50 MAV calculation for BNSF.  Taking into account the allocation factor, depreciation, and certain improvements to BNSF's tangible property in Oregon, this resulted in net improvements for BNSF in Oregon valued at

approximately $103.2 million. Without the inclusion of goodwill and other net intangible personal property, the net improvements for 2017 would be valued at only approximately $10.8 million.

33.    With the inclusion of BNSF's intangible goodwill and other net intangible personal property as "improvements," and applying certain rules for translating the value of new property into an assessed value, the Department calculates BNSF's 2017 Measure 50 MAV to be $208,170,100. Under a similar calculation, but without the inclusion of BNSF's intangible personal property, BNSF's 2017 Measure 50 MAV would be approximately $158,975,300.

34.    Because the Department included BNSF's intangible personal property, BNSF's Measure 50 MAV is more than 30% higher than it would otherwise have been.

35.    Because BNSF's RMV for 2017 exceeds its Measure 50 MAV for 2017 (regardless of whether BNSF's intangible personal property was included in the Department's computations), BNSF's assessed value is its Measure 50 MAV. Accordingly, the Department's inclusion of BNSF's intangible personal property caused BNSF's assessed value to be more than 30% higher than it would otherwise have been.

36.    With the Department's inclusion of BNSF's intangible personal property, BNSF would owe approximately $2,949,599 in property taxes on state-assessed property (based on the 2016 average tax rate for BNSF's state-assessed property as an estimate for the forthcoming 2017 tax rate). Using the same tax rate, but without the Department's inclusion of BNSF's intangible personal property, BNSF would owe approximately $2,252,549 in property taxes. The inclusion of BNSF's intangible goodwill has thus inflated BNSF's 2017 Oregon property tax bill by approximately $697,050, or more than 30%.

PAGE 8 - COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## FEDERAL LAW PROHIBITS THE DISCRIMINATORY TAXATION OF RAILROADS

37. The 4-R Act (now codified as amended in scattered sections of Title 49) was enacted to, *inter alia*, further the financial stability of the railway system of the United States.

38. Congress recognized that one threat to the economic viability of the railway system was States' discriminatory taxation of railroads and rail activity. Railroads are "easy prey for State and local tax assessors in that they are nonvoting, often nonresident, targets for local taxation, who cannot easily remove themselves from the locality." *W. Air Lines, Inc. v. Bd. of Equalization*, 480 U.S. 123, 131 (1987) (citation & internal quotation marks omitted). After an extended investigation, Congress concluded that railroads were significantly over-taxed each year and prohibited "discriminatory state taxation of railroad property." *Burlington N. R.R. v. Okla. Tax Comm'n*, 481 U.S. 454, 457 (1987). The legislative history of the 4-R Act thus "reflects Congress's concern that railroads were paying a disproportionate and unfair portion of the cost of state government." *Union Pac. R.R. v. Pub. Util. Comm'n*, 899 F.2d 854, 857 (9th Cir. 1990).

39. The 4-R Act provides, in relevant part, that a "State, subdivision of a State, or authority acting for a State or subdivision of a State may not" impose certain discriminatory property taxes or "[i]mpose another tax that discriminates against a rail carrier." 49 U.S.C. § 11501(b).

40. Subsection (b) of 49 U.S.C. § 11501 lists four acts which a State is prohibited from doing. The first three pertain to specific aspects of the assessment, levying, and collection of property taxes. The final subsection, (b)(4), prohibits States from imposing "another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the [Surface Transportation] Board." 49 U.S.C. § 11501(b)(4).

41.     In interpreting subsection (b)(4)'s prohibition on "another tax that discriminates," the Supreme Court has acknowledged that subsection (b)(4) forbids certain discriminatory property taxes, while giving States limited latitude to "grant exemptions from a generally applicable ad valorem property tax without exposing the taxation of railroad property to invalidation under subsection (b)(4)." *Dep't of Revenue v. ACF Indus., Inc.*, 510 U.S. 332, 340 (1994).  Here, Oregon's taxation of intangible personal property is not a "generally applicable ad valorem property tax." *Id.*  In fact, Oregon's general rule for nearly all taxpayers is that "intangible personal property is not subject to assessment and taxation." ORS § 307.030(2).  But the intangible personal property of railroads (and the isolated group of other centrally assessed taxpayers) is "singled out . . . for discriminatory treatment." *ACF Indus.*, 510 U.S. at 346–47.

42.     Federal courts have routinely held that the 4-R Act protects railroads from discriminatory property tax schemes, like Oregon's, which target railroads and a handful of other utilities or centrally assessed taxpayers for increased taxation under special rules that do not apply to other taxpayers.

43.     In *Burlington Northern Railroad v. Huddleston*, the Tenth Circuit held that Colorado's taxation of the intangible personal property of railroads violated the 4-R Act.  94 F.3d 1413 (10th Cir. 1996), *overruled in part on other grounds by Ala. Dep't of Revenue v. CSX Transp., Inc.*, 135 S. Ct. 1136 (2015).  Colorado's law, like Oregon's, did not generally tax the value of intangible personal property. *Id.* at 1414.  Yet, like Oregon, Colorado did tax the "value of intangible personal property owned by public utilities." *Id.*  The list of companies whose intangible personal property was subject to taxation in Colorado is virtually identical to the list of companies whose intangible personal property is subject to taxation in Oregon. *See id.*  Based on this list of companies targeted for discriminatory taxation, the Tenth Circuit noted that "Colorado

imposes an intangible property tax only upon a narrow group of taxpayers, consisting of interstate interests," and such interests are "'easy prey for State and local tax assessors' in that they are 'nonvoting, often nonresident, targets for local taxation,' who cannot easily remove themselves from the locality." *Id.* at 1417 (quoting *W. Air Lines, Inc. v. Bd. of Equalization*, 480 U.S. 123, 131 (1987)) (second internal quotation marks omitted).  The Tenth Circuit held that Colorado's taxation of the intangible property of this narrow group "singles out Plaintiff as part of an 'isolated and targeted group' for discriminatory tax treatment" in violation of the 4-R Act. *Id.*

44. In *Burlington Northern Railroad Co. v. Bair*, 60 F.3d 410, 413 (8th Cir. 1995), the Eighth Circuit similarly explained that "Iowa has singled out for taxation all the personal property of railroads and a handful of interstate utilities, while leaving untaxed most of the personal property of every kind, and all the intangible personal property, of the vast majority of commercial and industrial enterprises in the state."  The list of entities subject to the personal property tax in Iowa is again remarkably similar to the list of entities whose intangible personal property is subject to property taxation in Oregon.  *See id.* at 411 n.2 (noting that "public utilities, telephone and telegraph companies, railroads, express companies, electric companies and pipeline companies" had their personal property subject to taxation).  The Eighth Circuit held that "in the circumstances here, subsection (b)(4) does apply to prohibit Iowa from taxing the intangible personal property of railroads since Iowa imposes this tax upon only a small, targeted group of businesses."  *Id.* at 413.

45. The United States District Court for the District of North Dakota likewise held that the taxation of the personal property of centrally assessed businesses violates the 4-R Act because "only the personal property of these few 'centrally assessed' industries is taxed."

*Ogilvie v. State Bd. of Equalization*, 893 F. Supp. 882, 886 (D.N.D. 1995). The list of companies subject to the increased taxation in *Ogilvie* is again comparable to the list of centrally assessed taxpayers whose intangible personal property is subject to taxation in Oregon. *Id.* ("In summary, North Dakota taxes the personal property of only four industries: railroad companies, airlines, telecommunications and mobile radio communications companies, electric and gas distribution companies, and pipeline companies.").

## CAUSE OF ACTION

### The Inclusion of BNSF's Intangible Personal Property in BNSF's Property Tax Assessment Violates the 4-R Act

46. BNSF realleges and incorporates by reference Paragraphs 1-45.

47. BNSF is a rail carrier providing transportation subject to the jurisdiction of the Surface Transportation Board and is entitled to the protection of 49 U.S.C. § 11501(b)(4). *See* 49 U.S.C. § 10102(1).

48. The tax imposed on BNSF based on the assessment described herein raises revenue for the general welfare and is "another tax" within the meaning of 49 U.S.C. § 11501(b)(4).

49. Defendants have violated 49 U.S.C. § 11501(b)(4) by including intangible personal property in the property tax assessment for railroads, as part of the isolated group of centrally assessed taxpayers singled out for discriminatory treatment, but not for the general group of commercial and industrial taxpayers.

**PRAYER FOR RELIEF**

WHEREFORE, BNSF respectfully requests that this Court:

1. Declare that the Department's inclusion of BNSF's intangible personal property in BNSF's property tax assessment results in the discriminatory treatment of a rail carrier in violation 49 U.S.C. § 11501(b)(4);

2. Preliminarily and permanently enjoin the Department, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with it from assessing, levying, collecting, or imposing any tax on BNSF's property based on the discriminatory taxation of BNSF's intangible personal property; and

3. Award BNSF other relief that is just and proper.

Dated:  October 27, 2017        BALL JANIK LLP

/s/ James T. McDermott
James T. McDermott, OSB No. 933594
101 SW Main Street, Suite 1100
Portland, OR  97204
PH:  (503) 944-6025
jmcdermott@balljanik.com

MUNGER, TOLLES & OLSON LLP
Benjamin J. Horwich (*pro hac vice* motion forthcoming)
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
PH:  (415) 512-4000
ben.horwich@mto.com

MUNGER, TOLLES & OLSON LLP
Jessica Reich Baril (*pro hac vice* motion forthcoming)
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
PH:  (213) 683-9100
jessica.baril@mto.com

*Attorneys for Plaintiff BNSF Railway Company*